[No. 32160. Department Two. February 26, 1953.]

MARTIN A. HINES, *Appellant*, v. EDWARD A. NEUNER *et al.*, *Respondents.*[1]

[1]Reported in 253 P. (2d) 945.

*Houghton, Cluck, Coughlin & Henry* and *Paul Coughlin,* for appellant.

*Graves, Kizer, Martin & Shorts,* for respondents.

FINLEY, J.—This is a personal injury-negligence action. The plaintiff was injured while using a pedestrian crosswalk at the intersection of Fifteenth avenue west and west Dravus street in Seattle, when he stumbled and fell over a tow cable, which was attached to the rear of defendant Neuner's automobile and to the front of defendant Mylet's automobile, and was being used at the time to tow the latter's automobile along Fifteenth avenue west.

A jury rendered a verdict in favor of the defendants. Plaintiff's motion for a new trial was denied, and judgment was entered, dismissing the action with prejudice. Plaintiff's appeal is on a short record under Rule on Appeal 34(3), 34A Wn. (2d) 36. Error is assigned to the trial court's instructions Nos. 9 and 10, to the denial of plaintiff's motion for a new trial, and the dismissal of the action with prejudice.

Fifteenth avenue west is one of the main traffic arterials, running north and south, in Seattle. Fifty-four feet wide, it measures 27½ feet east of the center line and 26½ feet west of it. The avenue is intersected at right angles by west Dravus street, running east and west. To the east of the intersection, west Dravus street proceeds up a sharply inclined hill. Plaintiff's testimony emphasized that much of the traffic, proceeding east on west Dravus street from the Fort Lawton-Magnolia districts, turns left (to the north) at the intersection to avoid the steep hill on west Dravus street, east of the intersection. At the time of the accident, the traffic lights at the intersection were of the type that switch from red to green without any intervening amber warning light. There were pedestrian traffic-control lights at each corner of the intersection.

Defendant Neuner's car, towing the Mylet car and proceeding south in the traffic lane nearest the center line of Fifteenth avenue west, approached the intersection as the traffic light changed from green to red. The two cars stopped for the traffic light, but not until the Neuner car had crossed the pedestrian walkway. Its rear wheels were just at the south line of the east-west crosswalk traversing Fifteenth avenue west. The Mylet car stopped with its front wheels about even with the north line of the pedestrian crosswalk. The steel towing cable connecting the two automobiles was about *three-eighths inches in diameter*. Testimony indicated it was dirty brown in color and covered with grease. It was stretched taut across the pedestrian walkway, at a height of two to two and one-half feet above the pavement. The testimony is conflicting as to whether the distance between the two cars was more or less than fifteen feet. By city ordinance, a warning flag or sign must be attached midway of a towing cable when two cars so connected are more than fifteen feet apart.

The accident occurred about one o'clock p. m. on a clear day. The witnesses could not remember whether the sun was shining or not. Plaintiff Hines testified that he was hurrying to cross Fifteenth avenue west to catch a bus

which he saw approaching the intersection from the south on Fifteenth avenue west. He claimed that he looked at the pedestrian traffic signal on the northeast corner of the intersection; that he waited until the signal permitted pedestrians to cross and then started across the street in the pedestrian walkway, keeping a lookout to his right for automobiles which might be proceeding east on west Dravus street and turning left and to the north on Fifteenth avenue west. Plaintiff did not see the tow cable until after he had fallen over it to the pavement, and had crawled on his hands and knees to the northeast corner of the intersection. There, he looked back to where he had fallen and, for the first time, saw the tow cable.

A witness, Eva Scalese, testified that she was looking out the window of a drugstore located on the northwest corner of the intersection; that she saw plaintiff Hines approach the crosswalk, look at the pedestrian signal, and then start across Fifteenth avenue west. Her testimony was that she did not notice the defendants' cars and that she did not see the tow cable until after Mr. Hines fell, when she looked to see what had tripped him and saw the tow cable connecting the two automobiles.

Appellant's first assignment of error goes to the trial court's instruction to the jury No. 9. It read as follows:

"You are instructed that a person cannot cast the entire burden of his protection upon another, and that everyone owes a duty to himself in that respect. One must use his own intellect, senses and faculties for his own protection. The law does not permit a person to close his eyes to danger and then if he is injured as a result of such danger, to seek remedy in damages against another.

"*In the eyes of the law, a person will not be heard to say that he did not see an object which he plainly could have seen had he looked. The situation from a legal point of view is the same as though he had looked and seen the object. When the law requires a person to look, it places upon such person the duty of seeing and observing.*

"If you find from a preponderance of the evidence that the plaintiff failed to use reasonable care for his own protection, then he was negligent, and if such failure on his part was one of the causes contributing to the accident, then

he was guilty of contributory negligence. A plaintiff guilty of contributory negligence cannot recover damages." (Italics ours.)

The appellant contends this instruction was erroneous and prejudicial because, as worded, it states principles applicable only where there is a positive duty to look to discover a dangerous situation. He contends there was no such positive duty imposed upon him—that his only duty was that of exercising reasonable care for his own safety, taking into account all the facts existing at the time of the injury. The vice which appellant sees in instruction No. 9 is that it virtually impels a finding of contributory negligence by the jury.

Among the factors bearing upon the reasonableness of his conduct, despite his failure to see the tow rope, appellant points out the following: that reasonable men do not walk with their eyes affixed to the ground; this is especially true when crossing a busy intersection; there is no reason to look to the ground unless it can reasonably be anticipated there is some danger there, and that it is asking too much of one to anticipate that another might have stretched a tow cable across a pedestrian walkway. Appellant emphasizes that he was entitled to devote his attention to the pedestrian traffic signal and to watch for eastbound cars on west Dravus street which might be turning left (to the north) at the intersection into the northbound traffic lane ahead of him on Fifteenth avenue west; and finally, that the Neuner car on plaintiff's right increased the hazards by restricting the visibility, both of the plaintiff and of those who might make left turns off west Dravus.

Respondents contend that the instruction was proper; that plaintiff cannot recover, because he could have discovered the danger if he had only used his physical senses as a reasonable man should; that the instructions must be construed together, and if so construed, there is no prejudicial error.

The broad question concerning the propriety of instruction No. 9 is whether it is prejudicial because of its

strong tendency to tell the jury it is contributory negligence, under all circumstances, to fail to perceive that which is discoverable by the use of one's senses. We are of the opinion that in practical effect instruction No. 9 did just that, and thereby runs afoul of the rule we have repeated time and again—that the question of contributory negligence is for the jury. *Scott v. Pacific Power & Light Co.*, 178 Wash. 647, 35 P. (2d) 749; *Smith v. Manning's, Inc.*, 13 Wn. (2d) 573, 126 P. (2d) 44.

The cases specifically involving the question of a pedestrian's right to recover when he has tripped over a tow rope are not very helpful; many of them are distinguishable on their facts, and none of them specifically deals at length with the duty of a pedestrian to see the tow rope. See 3 Berry, Law of Automobiles (7th ed.) 272, § 3.178 *et seq.* Nor do we think those cases are strictly in point which relate to the general duty of a pedestrian to look and listen for cars before crossing a street (3 Berry, *supra*, 220, § 3.147), for the simple reason that such cases involve that which is reasonably to be expected—moving vehicular traffic—rather than that which cannot reasonably be expected —a tow cable stretched across a crosswalk between two stopped automobiles.

We have decided in other contexts that, although one must use his faculties and senses to discover and avoid danger (*Johnson v. Washington Route*, 121 Wash. 608, 209 Pac. 1100), there is not in all instances a positive duty of looking for particular objects in one's path which, admittedly, could have been seen if only the plaintiff had looked. In such cases, we made it clear that it was for the jury to decide whether a reasonable man, in the plaintiff's shoes, would, under the circumstances, have failed to perceive the obstacle in his pathway. *Smith v. Manning's, Inc., supra*; *Griffin v. Cascade Theatres Corp.*, 10 Wn. (2d) 574, 117 P. (2d) 651; and *Simpson v. Doe*, 39 Wn. (2d) 934, 239 P. (2d) 1051. The novelty of the present case lies in whether the same rule as found in those cases applies to the failure of a pedestrian to see a tow rope stretched across a crosswalk which he is lawfully using.

■ The problem posed is that of imputed knowledge and of deciding under what circumstances knowledge of a dangerous situation, which is discoverable by the use of one's senses, will be imputed to a plaintiff. The relevant rule is that one must make use of his faculties and senses ". . . to avoid danger, if he can *reasonably* do so, and failure . . . [to do so], if it contributes to the injury, will prevent a recovery . . ." *Johnson v. Washington Route, Inc., supra*, p. 609. (Italics ours.)

With this principle in mind, we can pass to the precise issue, that is, the legal effect of a failure to discover peril as that failure relates to the issue of contributory negligence. There is a decided split of authority on this point. Some courts, notably those of Pennsylvania and Illinois, take a strict view of the matter and hold that, as a matter of law, the failure to use one's senses to discover a peril which could have been discovered bars recovery. *Grubb v. Illinois Terminal Co.*, 366 Ill. 330, 8 N. E. (2d) 934; *Boock v. Acme Markets*, 347 Pa. 501, 32 A. (2d) 759; *Rohmann v. City of Richmond Heights*, 135 S. W. (2d) (Mo.) 378; and Prosser on Torts, p. 232, note 75. The *Grubb* case, *supra*, (p. 337) states this view as follows:

"The law will not tolerate the absurdity of permitting one to testify that he looked and did not see, when, had he properly exercised his sight, he would have seen."

Another line of authority concedes that one has a duty to look and to see readily discoverable obstacles in his path, or dangerous conditions; but that, nevertheless, it is for the jury to decide whether the failure to discharge this duty adequately is negligence. That is, on proof of the failure to look, it does not automatically follow that the plaintiff is contributorily negligent; the failure to look must have been unreasonable, considering all the facts and circumstances. *Pfisterer v. Key*, 218 Ind. 521, 33 N. E. (2d) 330; *Gillson v. Osborne*, 220 Minn. 122, 19 N. W. (2d) 1; *Ebel v. Bruzewski*, 296 Mich. 654, 296 N. W. 715.

■ As already noted, we have decided in another context that the failure to see what admittedly was visible, if only

one had looked, is not negligence automatically; it is a question of fact for the jury to decide whether, despite the failure to look, the plaintiff's conduct was still reasonable under the circumstances. The principal case in which we laid down this rule was *Smith v. Manning's, Inc., supra.* We held an instruction was prejudicial. Because it is so strikingly similar to instruction No. 9 in the case at bar, we shall quote hereinafter at length from *Manning's* case. Before doing so, it may be well to mention that the plaintiff in *Manning's* case slipped, apparently on a piece of pickle, as she was walking down a cafeteria aisle. In regard to the plaintiff's duty to keep a lookout for obstacles, the court instructed the jury specifically (p. 577), as follows:

" 'You are instructed that the law requires a person to use her faculties so as to avoid danger, if she can reasonably do so, and a failure in that regard, if it materially contributed to the injury complained of, will prevent a recovery by the person claiming injuries. *A person will be deemed to have actually seen what could have been seen, if she had looked.*

" 'If you believe by a preponderance of the evidence that the cause of the injury was the failure of Mrs. Smith to use her faculties, *when if she had looked,* or used ordinary care for her own safety, *she would not have fallen,* then she is guilty of contributory negligence, and your verdict should be for the defendant.' (Italics ours.)"

Apropos of the instruction there involved, we elaborated in *Manning's* case, as follows:

"So far as the record shows, appellant was in full possession of her faculties. She testified that she did not look at the floor just before she fell. The aisle was well lighted, and it must be assumed that, if she had looked directly at the spot where her foot slipped before she stepped there, she would have seen the piece of pickle that caused her to fall. By the italicized sentence of the first paragraph of the instruction, therefore, the court, in effect, told the jury that appellant must be deemed to have actually seen the piece of pickle on the floor.

"In the second paragraph, the jury was instructed that, if the cause of appellant's injury was her failure to use her faculties, 'when if she had looked . . . she would not have fallen,' she was guilty of contributory negligence. *The*

*principle that one will be deemed to have actually seen what could have been seen had he looked is applicable where there is a positive duty to look,* as in the case of a disfavored driver entering a street intersection, or where one is about to traverse a place of known danger, or the danger is so clearly apparent that it could not escape the attention of a reasonably prudent person. *The principle is not germane in the instant case, because it was not appellant's duty to keep her eyes constantly rivited to the floor as she walked along the aisle provided for her use,* nor can it be said that the danger was so obvious that, in the exercise of due care, she must have seen it. She testified that she first noticed the litter on the floor after she had fallen. *The condition was not so conspicuous as necessarily to challenge her attention prior to that time, and it was not incumbent upon her to watch her footing every step of the way.* [Citing cases.]

"The objectionable portions of instruction No. 9 seem to have been taken largely from *Johnson v. Washington Route,* 121 Wash. 608, 209 Pac. 1100. It was said there that the law requires a person to use his faculties so as to avoid danger, if he can reasonably do so, and that 'a person will be deemed to have actually seen what he could have seen if he had looked.' That case will serve as a good example of a situation in which the quoted principle is applicable. The plaintiff, in an action for personal injuries, had been a passenger on defendant's passenger steamer. When it docked at Bremerton, a gangplank was placed so as to extend from the boat to the wharf. The outer end of the plank was about twenty-four inches above the floor of the dock. Although it was a clear day, and there was nothing to obstruct her vision or *distract her attention,* the plaintiff walked off the end of the gangway and fell to the dock. She testified that she thought there was a step at the end of the plank, but, in the words of the opinion, 'She did not look to see if there were such a step, but walked off the gangplank without using her faculties  . . .' This court concluded that the plaintiff had been guilty of contributory negligence as a matter of law and affirmed the lower court's judgment of dismissal entered after the granting of defendant's motion for nonsuit.

"Manifestly, we have an entirely different factual situation here. Strictly followed and logically applied to the evidence in the instant case, instruction No. 9 would virtually impel a finding by the jury that the plaintiff had been

guilty of contributory negligence. We think that the instruction was both erroneous and prejudicial." (Italics ours.)

In *Griffin v. Cascade Theatres Corp.*, *supra*, we stated substantially the same rule as we did in the *Manning's* case, and denied that one had to go about anticipating dangers in his pathway and keeping his gaze affixed to the floor. While the question there was whether the trial court erred in holding plaintiff contributorily negligent as a matter of law rather than as to error predicated on prejudicial instructions, what we said is relevant here. In the *Griffin* case, p. 583, we said:

"[Appellant] was justified in assuming that she might safely walk upon the mat, and the obstruction of it, under the circumstances, was not so obvious as to challenge her attention. It was not incumbent upon her to watch her footing every step of the way."

Similarly, in still another case involving the duty of one to pay heed to the area ahead of him on which he was walking, we said in *Simpson v. Doe*, 39 Wn. (2d) 934, 937, 239 P. (2d) 1051:

"Where there is no reason to anticipate a hazard, reasonable care does not require one who is walking in a place provided for the purpose to keep his eyes rivited to the floor immediately in front of his feet."

It is true, as respondents contend, that slightly different considerations apply to the business invitees involved in these last-mentioned cases as contrasted with pedestrians crossing public streets at crosswalks. While a business invitee has no unqualified right to assume the premises are safe (*Manning's* case, *supra*), nevertheless, he generally can assume they have been made *reasonably* safe for his reception. The same can be said of one lawfully using the highways. He has a right to assume that others, using the highway with him, will exercise a reasonable degree of care for the safety of fellow motorists. *Hennessey v. Taylor*, 189 Mass. 583, 76 N. E. 224.

We are of the opinion that the plaintiff here did not have a positive duty to discover the tow rope, in the sense

that, on mere proof of his failure to see it, knowledge of the hazard would be automatically imputed to him so as to bar recovery. As we have already indicated, whether knowledge of the tow rope will be imputed to him depends on whether it was reasonable, considering all the circumstances then existing, for him to fail to see the tow rope.

Neither the plaintiff nor the defendant should be held to a rigid and inflexible rule of conduct which would require a person to act in only one way, and no other, in any given set of circumstances. To take from the jury its function of considering all of the various factors which go into the determination of contributory negligence is to ignore the principle that one is not bound, in all cases, to pay absolute heed to his surroundings. As stated in 2 Restatement of the Law of Torts 762, 771, § 289 k.:

"k. In determining the attention which can be properly expected from the actor, account is taken of the circumstances surrounding him. The actor is not required to pay exclusive attention to those features of his surroundings which he should recognize as involving a risk of injury to others. He may allow his attention to be diverted by circumstances which concern his own interests . . . Whether or not he is justified in so doing depends upon an infinite variety of circumstances."

■ We feel the foregoing comment is particularly applicable in the case at bar. The intersection was a busy one. There was certainly a reasonable necessity that plaintiff should keep a sharp lookout to his right to see that cars making left turns from west Dravus onto Fifteenth avenue west would not obstruct the open lane ahead of him or bear down on him once he got there. The plaintiff also might devote some attention reasonably to the opposite pedestrian signal. Further, the Neuner car, to his right, may have increased the peril of his situation, if it restricted his vision and that of drivers who might be making left turns onto Fifteenth avenue west. To hold, in such circumstances, that the plaintiff was bound to keep his eyes fixed to the ground ahead of him and thereby discover a tow rope which obstructed the crosswalk—especially when it was highly unlikely that such

an obstruction would be there—would impose a most severe and onerous duty on appellant. The question of contributory negligence or whether a reasonable man, in appellant's shoes, crossing the intersection under the circumstances at that time, should have suspected that a tow cable connected the two cars, was a matter for the jury to resolve under nonprejudicial instruction.

By way of caution, we wish to state that nothing we have said herein is to be taken as intimating that the jury, under appropriate nonprejudicial instructions, could not still find the plaintiff contributorily negligent.

What we have already said dispenses with the necessity of considering whether the position of the New York court in *Canfield v. New York Trans. Co.*, 128 App. Div. 450, 112 N. Y. S. 854, a case relied on by respondents, is sound. Later decisions have cast doubt on what was said there about the contributory negligence of one tripping over a tow rope. See *Rappetti v. Peugeot Auto Import Co.*, 97 Misc. 610, 162 N. Y. S. 133, implying that the *Canfield* case has been over-ruled.

As for the respondents' reliance on *Kuhnhausen v. Woodbeck*, 2 Wn. (2d) 338, 97 P. (2d) 1099, and *Simmons v. Kalin*, 10 Wn. (2d) 409, 116 P. (2d) 840, and their contention that the prejudicial nature of an instruction must be considered in light of the remaining instructions, and that in any event, the court's statement is only an abstract statement of law, we are not impressed. The instruction was too prejudicial to be cured by the other instructions; it gave undue prominence to a single issue at the expense of others. See 1 Blashfield's Instructions to Juries 335, 341, §§ 147, 148.

The next assignment of error we need treat but briefly. The court instructed the jury, in instruction No. 10, as follows:

"If you find under the evidence that the tow line which the plaintiff refers to herein was visible and in plain view, and if you further find that in the exercise of reasonable and ordinary care the plaintiff would have observed and avoided it, and if you further find that he failed to so do, he

is then guilty of contributory negligence and cannot re-cover damages, and your verdict will be in favor of the defendants.

"If you find under the evidence in the case that the *plaintiff did not look before stepping into the crosswalk*, and that a reasonably prudent person, in the exercise of ordinary care under like or similar circumstances, would have looked and would have seen the tow line, then I instruct you that the plaintiff was negligent in failing to see the tow line, and if you further find that such negligence contributed proximately to the accident, you will allow the plaintiff no damages, and your verdict must be in favor of the defendants . . . "

In his concise statement of points, the appellant contends that the instruction was improper, since there was no evidence in the record to show that the plaintiff did not look before entering the crosswalk. In brief, appellant contends that the jury might have misconstrued this instruction and concluded from it that the plaintiff did not look before he entered the crosswalk; and hence, that recovery was barred, even though he might still be in the exercise of due care after entering the crosswalk.

■ The words, "did not look before stepping into the crosswalk," are confusing. If, by this, it is meant that the plaintiff did not look at all, then the instruction was erroneous. We have repeatedly held that it is error to submit to the jury an issue where there is no substantial testimony on which to base the instruction. *Burge v. Anderson*, 164 Wash. 509, 3 P. (2d) 131, and cases cited therein. If, on the other hand, the trial court meant that, before stepping into the crosswalk, the plaintiff should have directed his gaze toward the tow rope, then what we said with regard to the assignment of error No. 1 is in point. Unquestionably, with this matter in mind, the trial court will clarify the matter on the new trial.

For the reasons indicated, the trial court erred in denying the appellant's motion for a new trial. The judgment is reversed and the cause remanded for proceedings consistent with the views expressed herein.

SCHWELLENBACH, HILL, HAMLEY, and OLSON, JJ., concur.