[No. 33210.   Department One.   September 8, 1955.]

W. E. GREETAN et al., Respondents, v. JACK SOLOMON et al., Appellants.[1]

[1]Reported in 287 P. (2d) 721.

*Welts & Welts,* for appellants.

*Walsh & Margolis* and *W. L. Gibbon,* for respondents.

DONWORTH, J.—This action was brought by guests of certain tenants of an apartment against the owners of the apartment building for injuries sustained by the plaintiff wife as the result of falling into an excavation dug by defendants' agent in the yard behind the building. The circumstances surrounding this accident are fully described in the trial court's findings of fact, hereinafter quoted.

As originally filed, the complaint alleged acts of negligence on the part of defendants which were said to have caused the accident. The answer denied these allegations and affirmatively alleged acts of contributory negligence on the part of plaintiff wife, which were denied in the reply.

At the trial, however, plaintiffs were allowed to amend their complaint to include a second cause of action, containing allegations regarding the digging of the excavation on which plaintiffs based their contention that defendants were guilty of wanton misconduct.

The case was tried to the court, sitting without a jury, on these two alternative causes of action. At the conclusion of the trial, the court orally announced its decision, holding that defendants were liable because of wanton misconduct in permitting the excavation to remain unguarded under the circumstances shown by the evidence. The court prepared its own findings of fact and conclusions of law, and these were duly entered. Judgment was then rendered for plaintiffs in the sum of $2,271.84.

Defendants have appealed, and assign error to certain

portions of findings Nos. 3, 9, 10, and 11, and to the conclusion of law that defendants were guilty of wanton misconduct.

The principal issue on this appeal is whether under the evidence in this case there was wanton misconduct on the part of appellants.

In order to decide this question, it is necessary to have in mind the facts relative to the physical condition and general description of the back yard of the apartment house, as well as the acts of the parties prior to the accident. We cannot describe these essential facts more briefly (and at the same time as adequately) than they are stated in certain findings of fact prepared by the trial judge himself. We, therefore, set forth findings No. 2 to No. 12, inclusive, italicizing the particular portions to which appellants have assigned error:

"II. Defendants are and at all times in issue have been husband and wife and reside at Concrete, Skagit County, Washington. At all times in issue, *defendants, as a marital community, have owned and operated an apartment house in the City of Concrete, said apartment house containing three rental units which were occupied by tenants at the time in issue.* The apartment building was twenty-five feet in width from east to west.

"III. To the rear, or north, of said apartment building, on part of the premises owned and operated by defendants, was a back yard of the approximate dimensions of twenty-five feet from east to west and roughly thirty feet from south to north. Immediately to the north of the back yard was an alleyway which connected with public streets located both to the east and to the west of defendants' premises. This alleyway was open to and used by automobiles, both those belonging to the public generally and those belonging to defendants' tenants and their guests. *The alleyway was a recognized and convenient means of access to defendants' premises.* Immediately to the west of the back yard and also to the west of the apartment building was an area of vacant land which was suitable for and was actually used by defendants' tenants and their guests as a parking place. This abutting vacant land belonged to the Concrete School District. Access to the back yard by foot was provided by means of a wooden boardwalk which had been constructed by defendants and which extended from south to north on the School District property but abutted on the building. *This walk was constructed with knowledge of the School authorities but without any formal grant of right,* along the west side of the building. In the back yard was a series of clotheslines. These four wire lines sagged to within approximately five to five-feet and four inches of the ground, and a person walking under them would have to 'duck' to pass under the wires. These lines were strung on crossarms attached to posts and extend from west to east

virtually the entire width of the yard. In the northeast corner of the yard, immediately north of the easterly clothesline post and adjacent to the south line of the alley, there were three garbage cans. In order to take a direct path to the garbage cans one would have to 'duck' under the clotheslines. The defendants knew this. The back yard was under the control of defendants as landlords and not under the control of any individual tenant. The yard and the facilities therein were furnished by defendants for the use and enjoyment of their tenants, specifically including the garbage cans and clotheslines.

"IV. Defendants, while not residing in the apartment building, visited the premises from time to time and were fully familiar with the existence and location of the facilities above described, and knew such facilities were being used by their tenants.

"V. It is admitted in their Answer and the Court finds that on November 7, 1951 defendants commenced an excavation in the northwesterly corner of the back yard. This excavation was to be approximately six feet long, four feet wide and four feet deep and its purpose was to permit the installation of a new septic tank to handle the sewage from the apartment building. The actual work was done by George Anasis, who was then about sixteen years of age. George was employed by Defendant John Robert Solomon, who took him to the premises and staked out the exact place where the excavation was to be. George was employed by defendants at an hourly wage and used tools furnished him by defendants. George started his digging after school on the afternoon of November 7th and stopped his work around dusk that day. The partially dug excavation was in the exact place previously staked out by defendant husband and was then upwards of fourteen inches deep at one end and somewhat less deep at the other.

"VI. Plaintiff wife is the sister of one Charles Garber, who with Mrs. Garber were paying tenants in one of defendants' apartment units. Plaintiffs were then temporarily residing elsewhere in Concrete, but over a period of some weeks frequently visited the Garbers at their apartment and were guests at dinner. On the evening of November 7, 1951, plaintiffs, together with plaintiff husband's brother, Roy Greetan, and the latter's wife, came to the Garber apartment as social guests at the express invitation of the Garbers to have dinner with them. Before dinner the Garbers were unexpectedly called to Seattle, but plaintiffs and Mr. and Mrs. Roy Greetan, still with the invitation of the Garbers, remained and continued with the dinner party.

"VII. Sometime after dark, at about 6:45 p.m., plaintiff wife left the Garber apartment with a paper sack full of garbage for the purpose of emptying the garbage in the aforementioned cans furnished by defendants. In so doing, she intended to follow the route which she was familiar with and had frequently taken with safety on prior occasions in daylight. This route was northerly on the wooden boardwalk, located as aforesaid, to the west of the westerly clothesline post, and thence easterly at approximately a right angle just south of the alleyway, to the northeast corner of the back yard, where the garbage cans were located. Plaintiff wife proceeded along this same route but after passing

the westerly clothesline post, she fell into the excavation and as a result of said fall sustained the injuries herein complained of.

"VIII. Defendants admit in their Answer and the Court finds that the excavation at the time in issue was open and uncovered, without signs, lights or guards around it, and the Court further finds from the evidence that defendants made no effort to warn plaintiffs, the Garbers, or any other tenants of their intention to excavate or of the fact that the excavation had actually been started. The Court further finds that defendants gave no instructions to George with regard to signs, lights, warnings or other safeguards and that no such safeguards were in fact taken. Defendants had provided no lighting in the general area and no light was provided from outside sources. At the time plaintiff wife sustained her fall, the back yard generally and the place of excavation particularly were in complete darkness, and the plaintiffs did not know and had no reason to know of the existence of the excavation.

"IX. The Court finds from the evidence that in the back yard there was a path beaten through the tall grass and running in a general northeasterly direction from the southwest corner of the back yard to the garbage cans. At the time of making this trip plaintiff took no flashlight or other light of any character with her, and did not leave the house door open for what little light it might give. The path avoided the excavation, but in taking it a person of *the height of plaintiff wife, five feet four inches,* would encounter the hazard of the clotheslines, *so that plaintiff wife, had she taken that path, would have been required to duck her head at the precise moment and at the precise place where the clotheslines crossed overhead.* Defendants knew of the existence of this pathway and of its use by tenants to reach the garbage cans, and of the sag in the clotheslines. The route which plaintiff wife had taken previously and which she intended to take on the night of November 7, 1951 was not along said well-defined path under the clotheslines, but was, rather, the route previously described and which was, except for the area of the excavation, over hard, well-packed, level ground, which was safe for travel, apart from the hazard created by the excavation. The Court further finds from the evidence that the west portion of the back yard area near the west clothesline, including that portion of the vacant lot abutting immediately to the west of defendants' back yard, was a safe place for travel on foot at night, except for the clotheslines and posts, which were necessary to avoid and which plaintiff wife avoided, and except for the excavation, which she had no reason to believe existed. *Plaintiff wife's route was the only safe route at night,* and defendants knew of the existing conditions that would make this the only safe route at night.

"X. The Court further finds from the evidence that under defendant husband's instructions to George, the latter was to commence the excavation as soon as convenient; that it was contemplated that the excavation would be started at or around the time George actually started his work; that there was to be no further communication between them unless something unusual occurred, and that there was in fact no further communication since work was commenced within the time that defendant husband and George contemplated. The Court further finds that

*the excavation was dug immediately across the only safe route to take
to the garbage cans at night.*

"XI. *The Court finds from all of the evidence that defendants' affirmative acts and omissions above-described were with full knowledge on their part of the high degree of probability that serious injury would result to one of their tenants or a guest of their tenants using the common back yard or one of the facilities situated therein and furnished by defendants for the common use of the tenants and their guests. The circumstances surrounding the hazard knowingly created by defendants were such as to render the risk created thereby unreasonable to a degree where such hazard constituted a trap, and manifest callousness and a reckless indifference toward injury, on the part of defendants.*

"XII. The Court further finds that despite the absence of lighting in the back yard, plaintiff wife would have been able to proceed in safety on her trip to the garbage cans had it not been for the unusual and unexpected hazard created by defendants."

We have examined the evidence with regard to those parts of the findings which are challenged in the assignments of error and cannot say that the evidence preponderates against them. Therefore, the findings of fact as entered by the trial court must be accepted as stating the facts of this case. *Paxport Mills v. Stohr,* 45 Wn. (2d) 667, 277 P. (2d) 332, and cases cited.

This court recently had occasion to consider and apply the doctrine of wanton misconduct in *Adkisson v. Seattle,* 42 Wn. (2d) 676, 258 P. (2d) 461, a case which is referred to in the briefs of both parties. While that case involved the collision of an automobile with an unlighted obstruction in the mainly traveled portion of a public street which carried heavy traffic, the definition therein of wanton misconduct is, in our opinion, applicable to the facts of this case. After quoting from Restatement of the Law of Torts, at page 1293, § 500, we defined wanton misconduct as follows:

"Wanton misconduct is not negligence, since it involves intent rather than inadvertence, and is ·positive rather negative. It is the intentional doing of an act, or intentional failure to do an act, in reckless disregard of the consequences, and under such surrounding circumstances and conditions that a reasonable man would know, or have reason to know, that such conduct would, in a high degree of probability, result in substantial harm to another."

Appellants argue that the doctrine is not applicable here because there is no evidence in this case that there was frequent night-time use of the area where the partial excavation was left unguarded. They contend that, since the trial court found that there was only one path from the north end of the board walk to the garbage cans (which was the one passing under the clotheslines), appellants could not reasonably be expected to foresee that Mrs. Greetan would walk around the west clothesline pole and pass near or fall into the excavation. They conclude this portion of their argument in their brief by saying:

". . . Be that as it may, we do not think that such single use unknown to the defendant, could create knowledge on his part by implication that during these few hours one of three tenants or one of their guests, would be apt to wander around this backyard in the darkness without a light, in search of a garbage can, and in all probability that such person would be injured. Absent those elements, there is also absent wanton misconduct."

The accident occurred at about 6:45 p.m. on November 7th. It seems to us that appellants either knew or had good reason to anticipate, within a high degree of probability, that the tenants (or their guests) would, after the evening meal, attempt to deposit refuse in the garbage cans located on the rear of the lot, and that at that time of year such an attempt would be made during the hours of darkness. They also knew or had reason to expect that such persons, in choosing the route to be followed in going to and from the garbage cans, in a high degree of probability, would elect to go around the west side of the clothesline instead of passing under it. Under such circumstances and conditions, a reasonable man should know, or would have reason to know, that the leaving of an unguarded excavation six feet by four feet in size and over a foot in depth, without any kind of warning or barrier, constituted a potential source of substantial harm to such persons. It appears clear to us, therefore, that this conduct (or misconduct) on the part of appellants was done in reckless disregard of its probable consequences and, in our opinion, constituted wan-

ton misconduct within the definition approved in the *Ad-kisson* case, which is quoted above.

Since we have concluded that the doctrine of wanton misconduct applies to the acts and omissions of appellants as found by the trial court, it is not necessary to consider the other matters discussed by respondents.

The judgment of the trial court is affirmed.

SCHWELLENBACH, FINLEY, and OTT, JJ., concur.

HAMLEY, C. J. (concurring)—I am in doubt as to whether the showing here made is sufficient to warrant the conclusion that there was wanton misconduct. At any rate, it seems to me that affirmance ought not to be predicated upon that drastic principle if the application of the familiar rules of negligence and contributory negligence call for the same result. I think they do.

That appellants are chargeable with at least ordinary negligence is established beyond question. The trial court concluded that there was contributory negligence on the part of Mrs. Greetan in attempting to go to the garbage can in absolute darkness, without the use of any light. In my view, this conclusion of law is not supported by the unchallenged findings of fact and the undisputed evidence.

Appellants do not question the trial court's finding of fact that Mrs. Greetan "did not know and had no reason to know" of the existence of the excavation; that, except for the clotheslines and posts (which were not the cause of the fall), the route followed by Mrs. Greetan on the night in question would have been a safe place for travel on foot at night had it not been for the excavation, which she had no reason to believe existed; and that, "despite the absence of lighting in the back yard," Mrs. Greetan would have been able to proceed "in safety" on her trip to the garbage can had it not been for the "unusual and unexpected" hazard created by appellants. Mrs. Greetan testified, without contradiction, that she had, on many previous occasions, both in daylight *and in darkness*, followed the route around the edge of the back yard and had never had any reason to believe that it was not safe.

362

The unquestioned findings and evidence set out above, in my opinion, compel the conclusion of law that Mrs. Greetan was not negligent in proceeding through the darkness, without a light, along the indicated route. She had no notice of the hazard. She was not called upon to anticipate that appellants would create this "unusual and unexpected" hazard, without which she would have been able to proceed in safety. Accordingly, I would hold that Mrs. Greetan is not chargeable with contributory negligence. This would call for affirmance without the necessity of deciding the question of wanton misconduct.

