[No. 35618.    Department One.    March 23, 1961.]

RICHARD DAVIS et al., *Appellants*, v. ANTHONY A. BADER et al., *Respondents*.[1]

*Warren Hardy*, for appellants.

*William R. Lanthorn* and *Bruce Maines*, for respondents.

[1]Reported in 360 P. (2d) 352.

HILL, J.—Except for an assignment of error relative to an instruction, we have another factual appeal prompted by the plaintiffs' dissatisfaction with the verdict of the jury and the judgment of dismissal entered thereon.

The plaintiffs occupied an apartment in a building owned by the defendants. To reach the street from the apartment, it was necessary to descend a flight of twelve steps (recessed into the hillside, or bank, between the apartment and the street). There was a brick retaining wall, and also handrails, on both sides of the steps. The ground contour was such that the handrails were higher than the top of the retaining walls, except at the street level and a few steps above it; and the handrails terminated two or three steps above the street level and just below the point where the retaining walls became higher than the handrails.

The plaintiff, Gwendolyn Davis, was descending the steps at 10:15 p. m. on a rainy night; she testified:

"I took ahold of the railing and then went down the steps as carefully as possible. I had to feel my way. I had to feel each step as I came to it because I couldn't see it. Q. What happened when you got down to the point where the railing ceased? What happened then? A. Then I put my hand against the brick wall [the retaining wall to which reference has been made] and tried to feel with my left foot the step below and I lost my balance somehow and just plunged off into the sidewalk, I fell from the second step. Q. Could you see this step you were stepping down toward? A. No, I couldn't see anything there. Q. Why not? A. Because it was too dark."

In an action against the owners of the apartment for the injuries and damages sustained in consequence of her fall, the claims of negligence submitted to the jury were: that the railing terminated at the second step above the bottom of the flight of stairs, and the failure to have the light at the top of the stairs burning.

The place where the handrails terminated was obvious from the pictures admitted in evidence; and it was conceded that the light at the head of the stairs was not burning at the time Mrs. Davis fell, and that it had been out for some time.

The only witnesses called by the defendants were for the purpose of establishing that Mrs. Davis' fall was not caused by any lack of light at the place where she testified she lost her balance and fell; their evidence was that a streetlight 111 feet from the bottom of the stairway was a "400-watt mercury vapor lamp" (rated at 20,000 lumens) and, even had the light at the head of the stairs been burning, this street light would have provided 73 per cent of the available light on the stairs at the place of the fall; that there was another streetlight 72 feet away—a "115-watt incandes-. cent lamp" (rated at 1500 lumens)—and it would have provided 6.5 per cent of the light at that point. Had the light for which the defendants were responsible been burning, it would have furnished 20.6 per cent of the available light.

The issues of negligence and proximate cause, and contributory negligence, were submitted to the jury; the plaintiffs took an exception to only one instruction, and that we will consider hereafter.

The jury, obviously, accepted the testimony of the experts and believed that there was sufficient light for Mrs. Davis to see where she was stepping.

■ It is not our province to determine the credibility of witnesses, nor can we say that the failure to extend the handrails to the bottom step was negligence, as a matter of law, under the circumstances; fact issues, properly submitted to the jury, will not be retried in this court. *Pritchett v. Seattle* (1959), 53 Wn. (2d) 521, 335 P. (2d) 31; *Heggen v. Seattle* (1955), 47 Wn. (2d) 576, 288 P. (2d) 830; *Rettinger v. Bresnahan* (1953), 42 Wn. (2d) 631, 257 P. (2d) 633.

The plaintiffs, as appellants here, assign error to an instruction which told the jury that a person is charged with the responsibility of seeing whatever a person exercising reasonable care would have seen.

Appellants rely on *Smith v. Manning's, Inc.* (1942), 13 Wn. (2d) 573, 577, 126 P. (2d) 44, and *Hines v. Neuner* (1953), 42 Wn. (2d) 116, 253 P. (2d) 945, in each of which we held erroneous an instruction that a person was charged with seeing what he would have seen if he had looked.

In *Smith v. Manning's, Inc., supra,* the instruction was:

" '. . . A person will be deemed to have actually seen what could have been seen, if she had looked.' "

and in *Hines v. Neuner, supra,* it was (p. 119):

" 'In the eyes of the law, a person will not be heard to say that he did not see an object which he plainly could have seen had he looked. . . .' "

As we pointed out in both the *Smith* and the *Hines* cases, such an instruction will be upheld where the hazard is apparent, as where a party testifies that he looked to his right and did not see a car approaching when the car was, in fact, only a short distance away, or even in "fall" cases such as *Johnson v. Washington Route, Inc.* (1922), 121 Wash. 608, 209 Pac. 1100.

■ However, in cases involving falls such an instruction, in effect, tells a jury that the plaintiff should have seen whatever it was that caused his fall. The instruction, in this case, is not subject to that criticism; it said only that it was the duty of Mrs. Davis to see what a person exercising reasonable care would have seen. That is a significant distinction.

In *Newman v. Owl Transfer & Storage Co.* (1957), 51 Wn. (2d) 67, 72, 316 P. (2d) 120, we approved an instruction stating that a person is charged with the duty of seeing those things which he would have seen had he been exercising reasonable care.

Finding no error in the instruction given, the judgment of the trial court is affirmed.

FINLEY, C. J., WEAVER, ROSELLINI, and FOSTER, JJ., concur.