[No. 4-39940-2.    Division Two.    November 6, 1969.]

WILLIAM MENDENHALL, *Respondent*, v. MARJORIE SIEGEL, *Appellant.*

*Reed, McClure & Moceri* and *J. E. Thonn,* for appellant.

*Burkheimer, Cavender, Wyman & Curtis* and *Michael S. Curtis,* for respondent.

PEARSON, J.—The plaintiff, William Mendenhall, received injuries when he tripped and fell on a worn rug in the hallway of an apartment building in which he had been a tenant for 19 months. From a jury verdict and judgment in his favor, the defendant apartment owner, Marjorie Siegel, appeals.

The principal issue on appeal was whether or not the trial court erred in instructing the jury on plaintiff's theory that defendant was guilty of wanton misconduct.

The apartment in question is a low rental building ($10.00 to $12.50 per week). The tenants range in ages up to 80 years.

The building has two floors of apartments which are accessible only through a center hallway. There are no private bathroom facilities, each floor having the bathroom at the east end of the hallway. The hallway on the second floor had a runner carpet down the center with short runners to the doors of each apartment. The carpeting was not wall to wall, but left the bare wood flooring on either side of the runner. There was heavy traffic along the hallway, which was dimly lighted.

The carpet was in poor condition. It was described by the witnesses as being "old, dingy and threadbare" and "holey and raggedy." The carpet had been in this condition for a long period of time—at least for the 19 months in which plaintiff had lived on the second floor. There were strings

that would periodically work loose from the fabric as holes appeared. These strings ran lengthwise and were quite strong. The manager of the apartment testified that he would cut off these long threads when they worked loose.

There was testimony that tenants (not the plaintiff) had complained about the condition of the carpet to the manager and were advised it was to be replaced. One former tenant had tripped on the carpet without injury.

During the 19 months plaintiff had lived at the apartment, he had passed across the carpeting several times a day without incident. He had noticed that the carpet was "raggedy" but had not paid much attention to it because he was "too busy." He had, however, observed the loose threads on the rug prior to his fall.

On November 6, 1965, the plaintiff, age 46, left his room to go to the bathroom. Directly outside his door, his feet became "hooked on some threads" and he fell.

In addition to submitting issues of negligence and contributory negligence, the trial court also submitted to the jury the issue of wanton misconduct. The usual instruction that contributory negligence would not defeat plaintiff's claim if the jury found the defendant guilty of wanton misconduct was also given.

We are convinced that "wanton misconduct" is not to be and should not be inferred from the evidence viewed in a light most favorable to the plaintiff.

The leading case on wanton misconduct[1] in Washington is *Adkisson v. Seattle,* 42 Wn.2d 676, 258 P.2d 461 (1953). This case has been referred to repeatedly in later cases where wanton misconduct has been alleged. The often-quoted definition of wanton misconduct in *Adkisson* is, at 687:

> Wanton misconduct is not negligence, since it involves intent rather than inadvertence, and is positive rather than negative. It is the intentional doing of an act, or intentional failure to do an act, in reckless disregard of

---

[1] It is not contended that the "willful" aspect of the rule applies in this case.

the consequences, and under such surrounding circumstances and conditions that a reasonable man would know, or have reason to know, that such conduct would, in a high degree of probability, result in substantial harm to another.

The *Adkisson* case involved deaths which occurred when an automobile ran into an open, unlighted, unguarded trench on an arterial street at night. The Supreme Court held that, considering all the circumstances, the city could be guilty of wanton misconduct.

We do not think this case is like *Adkisson* or any of the other cases in Washington or other jurisdictions in which a wanton misconduct instruction has been held appropriate. *See*, for example, *McGarvey v. Seattle*, 62 Wn.2d 524, 384 P.2d 127 (1963), where the city left an open, unguarded manhole in a busy downtown sidewalk at 3:30 p.m. The plaintiff broke both his legs when he fell into the manhole. *See also Greetan v. Solomon*, 47 Wn.2d 354, 287 P.2d 721 (1955), where a landlord left an unguarded excavation in the backyard of an apartment house where he knew tenants would walk at night.

There are several cases in Washington where the Supreme Court has held that a wanton misconduct instruction was inappropriate. Many of these cases involve "stronger" factual situations in which there was more "recklessness" and where there was a greater probability of substantial harm than in the case here.

*See Bidlake v. Youell, Inc.*, 51 Wn.2d 59, 315 P.2d 644 (1957); *Ranniger v. Bryce*, 51 Wn.2d 383, 318 P.2d 618 (1957); *Hanson v. Freigang*, 55 Wn.2d 70, 345 P.2d 1109 (1959); *Enyeart v. Borgeson*, 60 Wn.2d 494, 374 P.2d 543 (1962); *Bensen v. South Kitsap School Dist. 402*, 63 Wn.2d 192, 386 P.2d 137 (1963); *Horwath v. Washington Water Power Co.*, 68 Wn.2d 835, 416 P.2d 92 (1966); *Vioen v. Cluff*, 69 Wn.2d 306, 418 P.2d 430 (1966).

*See also Potts v. Amis*, 62 Wn.2d 777, 384 P.2d 825 (1963) for a summary of the line of cases dealing with the duty of a landowner not to wantonly injure invitees and licensees on his property. Under this line of cases, the concept of

wanton misconduct involved either an extraordinary concealed danger known to the owner, or a high degree of probability that the condition would result in substantial harm. *Dotson v. Haddock*, 46 Wn.2d 52, 278 P.2d 338 (1955), *Hanson v. Freigang, supra.*

In Restatement (Second) of Torts § 500 (1965) at 587, 588, and 590, wanton misconduct is defined:

> The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

[This statement of the rule is cited with approval in substantially the same form in *Adkisson v. Seattle,* 42 Wn.2d 676, 258 P.2d 461 (1953).]

> It [reckless misconduct] must not only be unreasonable, but it must involve a risk of harm to others substantially in excess of that necessary to make the conduct negligent. It must involve an easily perceptible danger of death or substantial physical harm, and the probability that it will so result must be substantially greater than is required for ordinary negligence.
>
> . . .
>     . . . The difference between reckless misconduct and conduct involving only such a quantum of risk as is necessary to make it negligent is a difference in the degree of the risk, but this difference of degree is so marked as to amount substantially to a difference in kind.

■ There is nothing in law so elusive as defining and applying degrees of fault. Whether the doctrine of wanton misconduct does or does not apply is a question of law for the court. Each case must be viewed upon its own facts. Since the effect of applying the doctrine in this type of case is to defeat the defense of contributory negligence, the factual situation must show on its face conduct or omission so great that the actor must know with a high degree of probability that death or serious bodily injury will result.

Under the facts of this case, we must conclude that the defendant's actions or omissions in allowing the carpet to remain in its dilapidated and deteriorating condition would not create a high probability of death or substantial physical harm.

We have studied the evidence, including photographs of the hallway, and we have examined the carpet plaintiff tripped on. We recognize that there were elderly persons and others who walked across the carpet and that the hallway may have been dimly lighted. However, we think that the defendant, while properly charged with negligence, was not "reckless" in failing to remove or replace the carpet. For a similar holding, see *Jensen v. Georgian Corp.*, 7 Utah 2d 92, 318 P.2d 646 (1967).

The fact that the manager periodically trimmed away the loose strings refutes the notion of a reckless disregard for the safety of others. If the plaintiff could safely walk over the carpet many times without concern for its condition, then it is likely that the situation did not constitute a high probability of death or substantial physical harm. It would be an unwarranted extension to apply the doctrine of wanton misconduct here. The case, as presented in the record before us, should have been tried on a basic negligence theory and for that reason the judgment must be reversed and a new trial ordered.

Other assignments of error must be considered, all of which we deem without merit.

We believe the court did not commit error in refusing defendant's requested instruction that one is charged with the duty of seeing that which we would have seen had he been exercising reasonable care. Washington Pattern Jury Instructions, 12.06.

The trial court generally instructed the jury upon contributory negligence, but declined to give this specific instruction. We do not think it was error to refuse such an instruction in this type of case. In *Davis v. Bader*, 57 Wn.2d 871, 360 P.2d 352 (1961) the Supreme Court permitted an

instruction identical to that requested here under somewhat similar facts. However, the *Davis* case does not suggest that such an instruction is mandatory. We think that the instruction given the jury that the plaintiff was required to exercise reasonable care for his own safety under the circumstances adequately presents the defendant's theory of the case. *See Feigenbaum v. Brink*, 66 Wn.2d 125, 401 P.2d 642 (1965).

■ Defendant also assigns error to the court's refusal to give a requested instruction on temporary unsafe condition (WPI 120.06.02). This assignment is without merit. That instruction is not appropriate where the hazardous situation is created by the defendant, where the defendant has known about the condition, or if it has existed for a long time. *Falconer v. Safeway Stores, Inc.*, 49 Wn.2d 478, 303 P.2d 294 (1956). *See also* WPI 120.06.02, Comment at 323 (1967).

In short, the case at bar did not involve a "temporary unsafe condition" to make the instruction applicable.

Defendant also assigns error to the court's allowing the jury to consider aggravation or a preexisting bodily condition as an element of damages. We believe there was sufficient evidence in the testimony of Dr. Cooper to support a finding that plaintiff's fall aggravated degenerative arthritic changes, causing a flare-up of arthritic symptoms. *See Bennett v. Messick*, 76 Wn.2d 474, 457 P.2d 609 (1969).

Since a new trial is warranted, we need not consider defendant's claim that the damages awarded were excessive.

The judgment is reversed and a new trial ordered. Costs on appeal will abide the outcome of the new trial.

ARMSTRONG, C. J., and PETRIE, J., concur.

---

Petition for rehearing denied December 30, 1969.