[No. 20389-1-III.   Division Three.   August 6, 2002.]

M'LISS MORSE, *Appellant*, v. KELLE ANTONELLIS, ET AL., *Respondents*.

*Russell K. Jones*, for appellant.

*Cheryl R.G. Adamson* (of *Rettig, Osborne, Forgette, O'Donnell, Iller & Adamson, L.L.P.*), for respondents.

KURTZ, J. — M'liss Morse and Kelle Antonellis were involved in an automobile collision. Ms. Morse sued Ms. Antonellis, alleging damages caused by Ms. Antonellis's negligence. A jury found Ms. Antonellis was not negligent. Ms. Morse appeals contending that the jury verdict was not supported by substantial evidence. We reverse and remand for a trial on damages.

## FACTS

On July 12, 1996, at 1:00 P.M., M'Liss Morse was driving westbound on Francis Avenue approaching an intersection with Perry Street. The day was clear and dry, and the roadway was straight and level. Francis Avenue is a four-lane roadway with two lanes of travel in each direction. The posted speed limit is 35 miles per hour. Ms. Morse was traveling 32 miles per hour in the westbound curb lane. The intersection with Perry Street is controlled by stop signs on Perry.

A pickup truck was stopped in the westbound center lane of Francis at the intersection with Perry. The pickup was signaling a left turn onto Perry southbound, waiting for oncoming traffic on Francis to clear. There is no evidence of the size of the pickup, whether it was a small import or a large, four-wheel drive.

Kelle Antonellis approached the same intersection from the opposite direction in the eastbound center lane of Francis. Ms. Antonellis stopped at the intersection, waiting to turn left northbound on Perry. Ms. Antonellis looked in the outside lane of westbound Francis and did not see any

vehicles. Ms. Antonellis turned left as Ms. Morse entered the intersection. The vehicles collided in the westbound curb lane. Ms. Antonellis did not see Ms. Morse before the impact.

Ms. Morse sued Ms. Antonellis for damages for the injuries she received in the accident. The case was tried to a jury, which returned a defense verdict, finding that Ms. Antonellis was not negligent. Ms. Morse's motion for judgment notwithstanding the verdict was denied and she appeals.

## ANALYSIS

Ms. Morse contends the court erred by failing to grant a judgment notwithstanding the verdict because there is no substantial evidence to support the jury verdict of no negligence. She argues that Ms. Antonellis was negligent by failing to yield to oncoming traffic and failing to see what was there to be seen.

CR 50(a)(1) provides as follows regarding motions for judgment as a matter of law:

> If, during a trial by jury, a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find or have found for that party with respect to that issue, the court may grant a motion for judgment as a matter of law against the party on any claim . . . that cannot under the controlling law be maintained without a favorable finding on that issue.

"Motions for a directed verdict and motions for judgments notwithstanding the verdict were renamed 'motions for judgment as a matter of law' effective September 17, 1993." *Litho Color, Inc. v. Pac. Employers Ins. Co.*, 98 Wn. App. 286, 298 n.1, 991 P.2d 638 (1999).

" 'Granting a motion for judgment as a matter of law is appropriate when, viewing the evidence most favorable to the nonmoving party, the court can say, as a matter of law, there is no substantial evidence or reasonable inference to sustain a verdict for the nonmoving party.' "

*Guijosa v. Wal-Mart Stores, Inc.*, 144 Wn.2d 907, 915, 32 P.3d 250 (2001) (quoting *Sing v. John L. Scott, Inc.*, 134 Wn.2d 24, 29, 948 P.2d 816 (1997)). "Substantial evidence is said to exist if it is sufficient to persuade a fair-minded, rational person of the truth of the declared premise." *Brown v. Superior Underwriters*, 30 Wn. App. 303, 306, 632 P.2d 887 (1980). When reviewing a motion for judgment notwithstanding the verdict (judgment as a matter of law), this court applies the same standard as the trial court. *Goodman v. Goodman*, 128 Wn.2d 366, 371, 907 P.2d 290 (1995).

■■ Ms. Antonellis had a duty to yield to oncoming traffic. City of Spokane Municipal Code 16.61.185. "The primary duty of avoiding an accident rests upon the driver who proposes to make a left turn at an intersection in the face of oncoming traffic." *Harris v. Burnett*, 12 Wn. App. 833, 842, 532 P.2d 1165 (1975). RCW 5.40.050 provides that "[a] breach of a duty imposed by statute [or] ordinance . . . shall not be considered negligence per se, but may be considered by the trier of fact as evidence of negligence." "Although violation of a statute/duty is no longer negligence per se . . . , this does not mean RCW 5.40.050 necessarily bars a trial court from finding negligence as a matter of law." *Pudmaroff v. Allen*, 138 Wn.2d 55, 68, 977 P.2d 574 (1999).

■ In addition, Ms. Antonellis had a duty to see what a person exercising ordinary care would have seen. *Davis v. Bader*, 57 Wn.2d 871, 874, 360 P.2d 352 (1961). Ms. Morse testified that she saw Ms. Antonellis's car a block before she reached the intersection. Yet, Ms. Antonellis testified she looked and did not see Ms. Morse's car until she hit it. Ms. Morse's car was there to be seen, and Ms. Antonellis failed to see it.

■ Ms. Antonellis argues that there was evidence that Ms. Morse was in the center lane and switched lanes shortly before the intersection. The basis of this argument is Ms. Morse's following testimony:

I was westbound on Francis going towards the intersection of Perry. I was in the curb lane. *I just approached the curb lane* about the speed I had about 32 and stopped, was stopped by the impact just into the intersection itself.

Report of Proceedings at 14 (emphasis added). To find that Ms. Morse switched to the curb lane shortly before the intersection on this scant amount of evidence would be mere speculation or conjecture on the part of the jury. There must be substantial evidence, as opposed to a mere scintilla, to support the verdict because the verdict cannot be founded on mere theory or speculation. *Belli v. Shaw*, 98 Wn.2d 569, 574, 657 P.2d 315 (1983). If the evidence is conjectural and the jury rendered its verdict on the basis of such speculation, the judgment on the verdict must fall. *Tokarz v. Ford Motor Co.*, 8 Wn. App. 645, 654, 508 P.2d 1370 (1973).

In addition, even if Ms. Morse switched lanes shortly before the intersection, Ms. Antonellis should have waited until she had a clear view. If the obstruction that blocks the view of the disfavored driver (the driver who does not have the right-of-way) is one that reasonably can be expected to move, like another car, then the disfavored driver must permit the impairment to his view to move on so he can see the stretch of the road from which a favored driver might be approaching. *Harris*, 12 Wn. App. at 842.

The record here is inadequate to support the jury's verdict. Ms. Antonellis was negligent as a matter of law. Any theory that Ms. Morse may have caused the accident by switching lanes shortly before the intersection is entirely speculative. Accordingly, the court erred by denying Ms. Morse's motion for a judgment as a matter of law.

We reverse and remand for a trial on damages.

SCHULTHEIS, J., concurs.

SWEENEY, J. (dissenting) — This case was tried to a jury over the course of a one-day trial. The lawyer representing the plaintiff, M'Liss Morse, neither moved for summary

judgment (CR 56) on the issue of liability before trial, nor did he move for a direction on liability at the end of the case (CR 50(a)(1)). And he did not do so for good reason. Liability was contested and the facts were disputed. A properly instructed jury then accepted Kelle Antonellis's factual theory of the case and rejected Ms. Morse's.

The question before us is whether there is substantial evidence to support that verdict. *Elmer v. Vanderford*, 74 Wn.2d 546, 549-50, 445 P.2d 612 (1968).

We review the evidence in a light most favorable to the prevailing party, Ms. Antonellis. *Id.* Specifically as applied here, we must accept Ms. Antonellis's testimony at face value and reject that of Ms. Morse. One fair reading of the evidence is that Ms. Antonellis came to a complete stop, carefully looked down the curb lane for approaching traffic, saw no cars approaching in the curb lane, and then proceeded to turn left. Report of Proceedings (RP) at 122-23. Certainly another fair reading of what happened from Ms. Morse's testimony was that Ms. Morse approached the intersection in the curb lane and was there to be seen. RP at 14. But the jury believed Ms. Antonellis and did not believe Ms. Morse. That was the jury's prerogative, not ours.

> "The inferences to be drawn from the evidence are for the jury and not for this court. The credibility of witnesses and the weight to be given to the evidence are matters within the province of the jury and *even if convinced that a wrong verdict has been rendered, the reviewing court will not substitute its judgment for that of the jury, so long as there was evidence which, if believed, would support the verdict rendered."*

*Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 108, 864 P.2d 937 (1994) (some emphasis omitted) (quoting *State v. O'Connell*, 83 Wn.2d 797, 839, 523 P.2d 872 (1974)).

The trial judge properly instructed this jury on negligence: "Negligence is the failure to exercise ordinary care. It is the doing of some act which a reasonably careful person would not do under the same or similar circumstances . . . ." Clerk's Papers (CP) at 19 (Instruction 12). The court

instructed the jury on the duties of a disfavored driver: "[A] driver intending to turn to the left within an intersection shall yield the right of way . . . ." CP at 15 (Instruction 8). Finally, the court instructed the jury that Ms. Antonellis had a duty to see that which was there to be seen: "Every person has a duty to see what would be seen by a person exercising ordinary care." CP at 18 (Instruction 11).

The jury listened to the evidence, read these instructions, and decided after deliberating that Ms. Antonellis was not negligent. Again, that was the jury's prerogative.

Ms. Antonellis came to a complete stop, looked for oncoming cars in the curb lane, saw none, and began her turn. RP at 122-23. These are the facts of this case. And because those are the facts of this case, the jury was correct.

This is precisely the type of factual dispute juries resolve by the hundreds in this state every year, and for good reason:

> "The nature of intersection collisions makes timing an all pervasive element to be evaluated by the jury when the circumstances leave the imposition of fault open to question. The interaction between two vehicles involves location, direction, movement, conditions, obstructions, actions, observations and numerous other influences that may have brought about a crash course rather than safe passage."

*Hough v. Ballard*, 108 Wn. App. 272, 281, 31 P.3d 6 (2001) (quoting *Harris v. Burnett*, 12 Wn. App. 833, 836, 532 P.2d 1165 (1975)).

Indeed, a jury resolution was particularly appropriate here. There was very little evidence on what occurred in and around the intersection where this accident occurred. There were no skid marks. There were no independent eyewitnesses. There was no description of the pickup stopped in front of Ms. Antonellis and turning south onto Perry.

The jury's determination then rested primarily on the credibility of the parties to this suit. If the jury believed Ms. Morse, then she was in the curb lane, there to be seen, and

Ms. Antonellis was negligent for turning in front of her. If, on the other hand, the jury believed Ms. Antonellis, then she came to a complete stop, viewed the curb lane, and Ms. Morse was not there to be seen. It was entirely within the jury's authority to believe Ms. Antonellis's version of events rather than Ms. Morse's. *Burnside*, 123 Wn.2d at 108.

Ms. Morse argues that there was no substantial evidence to support Ms. Antonellis's theory that Ms. Morse was driving behind the truck and then suddenly switched to the curb lane prior to the intersection. She argues that such a finding would be nothing more than conjecture. Appellant's Br. at 6-7. But the precise location of Ms. Morse's car prior to the accident is not a necessary predicate for the jury's verdict. The jury need only have determined that Ms. Antonellis's conduct was reasonable. CP at 19 (Instruction 12). And that determination was adequately supported by Ms. Antonellis's testimony. RP at 122-23. Ms. Morse was not in the curb lane when Ms. Antonellis started her turn. Determining exactly where Ms. Morse came from is neither a condition of nor necessary to support this verdict.

In sum, this is a case of conflicting testimony over what occurred at a "straight-vanilla" intersection accident. The jury heard the evidence, judged the credibility of the parties, and was properly instructed on the law. And it rendered a verdict in favor of Ms. Antonellis. It is not our role to second-guess the jury's wisdom or replace it with our judgment on what occurred. *Burnside*, 123 Wn.2d at 108; *Lillig v. Becton-Dickinson*, 105 Wn.2d 653, 657, 717 P.2d 1371 (1986).

The jury's verdict should be affirmed. And for that reason I dissent.